| | |
|---|---|
| NOAH KOLPACK, | Case No.: 1:19-cv-00300-LJO-SAB (PC) |
| Plaintiff, | |
| v. | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT |
| JONI LENARD, et.al., | [ECF No. 1] |
| Defendants. | |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

Plaintiff Noah Kolpack is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Plaintiff's complaint, filed February 28, 2019.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by individuals who are proceeding in forma pauperis. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (per curiam); 28 U.S.C. § 1915(e)(2). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Individuals proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint and first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

On June 17, 2014, Plaintiff's arm was broke, and his spine was severely injured by sheriff deputies at Tuolumne County Jail. Plaintiff's injuries were intentionally concealed by Dr. McKay and nurse Joni Lenard. Plaintiff's arm was twisted until it broke or cracked. One of the officer's put all his weight on Plaintiff's spine with his knee. Plaintiff knew immediately that something bad happened to his back. Nurse Lenard and Dr. McKay told Plaintiff he was fine and to go back to his cell. Plaintiff was later provided an x-ray of his arm but not his back. Plaintiff walks with a cane and requires a lift in his shoe because of the spinal injury which caused sciatica and atrophy. Plaintiff

developed a hernia. Dr. McKay told nurse Lenard that the hernia was not that bad and there was no nerve damage.

On September 20, 2017, Plaintiff fell in the shower and tore his rotator cup. There was no shower chair provided or handicap railing for assistance. Plaintiff also sustained orbital fractures and a pinched nerve in his left eye. Plaintiff received an MRI of his back while he was at San Jose Hospital. Orthopedics at San Jose Hospital ordered spinal intervention therapy and pain management. While at the hospital, Plaintiff was given pain medication and a prescription was issued for his return to the jail; however, nurse Lenard threw the prescription out. Dr. Cassassi told Plaintiff that he did not want him to get "addicted" to the pain medication. Plaintiff asked Dr. Hurr for an MRI, but he denied it because of the plate in his arm. Nurse Lenard sent Plaintiff to get eyeglasses, but nothing was mentioned about the pinched nerve.

Plaintiff was ultimately sent for therapy and it was determined that something was wrong with one of the three muscles in his shoulder. The doctor recommended an MRI of his shoulder and back. However, nurse Joni Lenard and all staff ignored the orders.

On September 24, 2017, officer Laios called Plaintiff out of the medical tank. On camera, he can be heard telling Plaintiff "without your walker." Nurse Liz stated at least fives times on camera, "when ya gonna give up that walker?" Officer Teague asked nurse Crystal if Plaintiff needed the walker, and she said "yes." However, Teague tried to take Plaintiff's walker away as soon as she walked away.

On October 14, 2018, Plaintiff fell again and re-injured himself.

Officers use the medical tank to house inmates with undesirable charges that cannot be housed in the general population. Plaintiff was hit over the head by an inmate who was making sexual advances at the young inmates in the tank. When they would refuse, he would try to fight them. Plaintiff told him that he was not going to punk around the young inmates, and he then hit Plaintiff in the head with his walker.

Nurse Joni Lenard assembled a shower chair, but it collapsed the first time Plaintiff attempted to use it and it was never repaired.

///

Officer Teague opened Plaintiff's legal mail, threw some away and scattered the other mail all over the bunk and floor. Plaintiff has been denied copies of his legal mail. In addition, legal mail never made it to its destination.

Dr. McKay and nurse Lenard have accused Plaintiff of making terrorist threats after Plaintiff stated, "I will see you in court."

## III.
## DISCUSSION

### A. Section 1983 Liability

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### B. Federal Rule of Civil Procedure 8, 18 and 20

Plaintiff's complaint does not contain a short and plain stamen of his claims. Therefore, the Court advises Plaintiff of the following requirements under the Federal Rules of Civil Procedure regarding the general formatting of his complaint. Plaintiff's complaint must contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Federal Rule of Civil Procedure 8(d)(1). A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Federal Rule of Civil Procedure 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Federal Rule of Civil Procedure 10(b). The function of the complaint is not to list every single fact relating to Plaintiff's claims. If Plaintiff wishes

to amend his complaint, he must set forth his claims in a simple, concise, and direct manner in order to meet the requirements of Rule 8.

In addition, a basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

Plaintiff's instant complaint contains several different allegations which are not related. The Court advises Plaintiff that each claim that is raised in an amended complaint must be permitted by either Rule 18 or Rule 20. Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

### C. Medical Care

A pretrial detainee's claim of denial of adequate medical care arises under the Due Process Clause of the Fourteenth Amendment. See Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (Due Process Clause is relied on for pretrial detainees' claims because " 'State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'"). The deliberate-indifference standard that applies to a pretrial detainee's

claim is an objective one rather than subjective as applied to a convicted prisoner's claim. In Gordon, the Ninth Circuit recently set forth the objective standard applicable to pretrial detainees as follows:

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of getting serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon, 888 F.3d at 1125.

With regard to Plaintiff's medical care or lack thereof, Plaintiff presents only conclusory and vague allegations, and the Court cannot determine without further clarification whether he may state a plausible claim under the Fourteenth Amendment. It is clear from Plaintiff's allegations that he was examined and provided some type of treatment. Plaintiff's contentions that nurse Lenard "ignored" recommendations and that officer Teague "attempted" to take his walker away are too conclusory to determine the exact nature of the wrong and whether they may be liable under the Fourteenth Amendment. Further, the fact that Plaintiff does not agree with Dr. McKay's assessment of his medical conditions does not give rise to a claim. If Plaintiff amends the complaint, he should set forth in a short and plain statement what each Defendant did or did not do with respect to each of his medical conditions and how he was harmed. Accordingly, Plaintiff fails to state a cognizable claim under the Fourteenth Amendment.

**D.     Legal Mail**

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina v. Penzone, 849 F.3d 1191, 1195 (9th Cir. 2017).

When incoming mail is legal mail, there are heightened concerns with allowing prison officials unfettered discretion in opening and reading an inmate's mail. Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. Id. at 1196–97 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation); Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." Id. at 1198 (quoting Nordstrom v. Ryan, 762 F.3d 903, 910 (9th Cir. 2014)).

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

It appears that Plaintiff contends his Government Tort Claim Form was opened and passed around for others to view. However, a complaint mailed to and from the Court is not considered legal mail for purposes of First Amendment protection. Further, although Plaintiff contends that officer Teague opened, threw away, and scattered some of his "legal" mail, Plaintiff's claim is conclusory in nature as he has failed to set forth sufficient factual information for the Court to determine that the mail fails within the definition of "legal" mail. Plaintiff does not sufficiently explain why he characterizes the mail involved as "legal" mail. See O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to/from government agencies and officials as legal mail); see also Kennan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail).

Just as a prisoner "does not retain rights inconsistent with proper incarceration," Overton v. Bazzetta, 539 U.S. 126, 131 (2003), individuals civilly committed to a mental health facility for treatment do not retain rights inconsistent with that treatment. Inspecting the incoming and outgoing mail of SVPs for contraband material, such as pornography or weapons, is entirely appropriate. Allen

v. Mayberg, No. 1:06-cv-01801-BLW-LMB, 2013 WL 3992016, at *4 (E.D. Cal. Aug. 1, 2013). Moreover, an isolated instance of mail tampering, even of legal material, is usually insufficient to show a constitutional violation and instead, regular and unjustified interference is required. Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012). Accordingly, at this juncture, Plaintiff fails to state a cognizable claim under the First Amendment.

### E.     Retaliation

Prisoners [and pretrial detainees] have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison [pretrial] context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Short v. Sanzberro, No. 1:09-cv-00996-OWW-GSA PC, 2009 WL 5110676, at *5 (E.D. Cal. Dec. 18, 2009) ("Civil detainees are protected from retaliation by the First Amendment). Minor acts such as "bad mouthing" and verbal threats usually cannot reasonably be expected to deter protected speech and therefore do not violate a plaintiff's First Amendment rights. See Coszalter v. City of Salem, 320 F.3d 968, 975-76 (9th Cir. 2003).

Although Plaintiff contends that Defendants Dr. McKay and nurse Lenard accused him of making terrorist threats after Plaintiff stated, "I will see you in court," Plaintiff's claim is conclusory in nature and lacks sufficient factual detail to support a claim for retaliation. As stated above, mere verbal threats are insufficient to give rise to a claim under the First Amendment. Further, Plaintiff has failed to demonstrate that any adverse action was taken against him because of his protected conduct under the First Amendment. See Herrick v. Quigley, No. 3:15-cv-05016-RBL-KLS, 2016 WL 7324288, at *9 (W.D. Wash. Nov. 2, 2016) ("Retaliation is not proven by simply showing that a

defendant … took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity.") Accordingly, Plaintiff fails to state a cognizable retaliation claim.

### F.     Challenge to State Criminal Proceedings

Plaintiff names two of his defense attorneys as Defendants and appears to raise challenge to his underlying state criminal proceedings. To the extent Plaintiff is attempting to challenge his pending state court proceedings, his claim is not cognizable.

Federal courts "may not interfere with pending state criminal or civil proceedings." Aiona v. Judiciary of State of Haw., 17 F.3d 1244, 1248 (9th Cir. 1994). The Younger doctrine precludes a federal court's intervention in ongoing state proceedings. Younger v. Harris, 401 U.S. 37 (1971). Younger abstention is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue. Middlesex County Ethics Comm. V. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Dubinka v. Judges of the Superior Court, 23 F.3d 218, 223 (9th Cir. 1994). The rationale of Younger applies throughout the appellate proceedings, requiring that state appellate review of a state court judgment be exhausted before federal court intervention is permitted. Dubinka, 23 F.3d at 223 (even if criminal trials were completed at time of abstention decision, state court proceedings are still considered pending). It appears that Plaintiff is involved in a current criminal action from which this Court must abstain. Furthermore, in Heck v. Humphrey, the United States Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 486-87. Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-2 (2005). Accordingly, Plaintiff cannot challenge is pending criminal proceedings in this Court.

### G.     Request for Appointment of Counsel

Plaintiff requests appointment of counsel to assist him in litigating this action. Plaintiff is advised he does not have a constitutional right to appointed counsel in this action, Rand v. Rowland,

113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require any attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

The test for exceptional circumstances requires the Court to evaluate the Plaintiff's likelihood of success on the merits and the ability of the Plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. In the present case, the Court does not find the required exceptional circumstances. At this early stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. As stated herein, Plaintiff's allegations in the complaint fail to give rise to a cognizable claim and leave to amend will be granted. Thus, at the present time, there is no complaint on file that states a cognizable claim for relief. Furthermore, the Court finds that Plaintiff can adequately articulate his claims, which are not complex. Accordingly, Plaintiff's motion for appointment of counsel is denied, without prejudice.

### IV.

### CONCLUSION AND ORDER

For the reasons discussed, Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies identified in this order. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at

678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>George</u>, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.  <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint;
3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length;
4. Plaintiff's request for appointment of counsel is denied, without prejudice; and
5. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: **March 15, 2019**

UNITED STATES MAGISTRATE JUDGE